582 S.E.2d 400

**In the Matter of William O. KEY, Jr., Respondent.**

No. 25659.

Supreme Court of South Carolina.

Submitted April 29, 2003.
Decided June 2, 2003.

Henry B. Richardson, Jr. and Michael S. Pauley, both of Columbia, for The Office of Disciplinary Counsel.

Desa A. Ballard, of Columbia, for Respondent.

PER CURIAM:

Respondent and Disciplinary Counsel have entered into an agreement pursuant to Rule 21, RLDE, Rule 413, SCACR, in which respondent admits misconduct and agrees to accept an admonition or a public reprimand. We accept the agreement and issue a public reprimand.

*Facts*

## I. Commercial property matter.

According to the facts stated in the agreement, the seller and purchasers of certain commercial property sought respondent's assistance in transferring title of the property from seller to purchasers. The parties had been referred to respondent by a person associated with respondent's brother, a certified public accountant. Respondent agreed to discuss the matter with the parties if terms of purchase were agreed upon. The parties negotiated between themselves regarding the terms of the transaction and, after reaching agreement, contacted respondent to complete the transaction. Respondent was retained to represent all parties to the transaction. Respondent acknowledges that he did not make proper disclosure to the parties of the risks of joint representation and did not obtain informed waivers from the parties for joint representation.

One of the reasons for the delay in agreement regarding the terms of the transaction was that purchasers had been unable to obtain independent financing. The parties had agreed that seller would finance the sale, with an assumption, via wrap-around mortgage, by the purchasers of the existing Small Business Administration (SBA) mortgage.

Respondent maintains he had only a short period of time in which to complete the transaction because seller was subject to a family court order which required her to have her former spouse released from the SBA mortgage by a certain date or face financial consequences in family court.

Respondent wrote a letter to the SBA advising of the contemplated transaction and requesting relevant information to complete the wrap-around mortgage. Three days later, on the final date the transaction could be completed without violating the family court order, the parties gathered at respondent's office to complete the transaction. During that meeting, respondent received a telephone call from the SBA informing him that a wrap-around mortgage would not be permitted, and that the sale of the property, as agreed upon by the parties, would result in the mortgage being accelerated against seller and her husband. Respondent advised the parties of the position taken by the SBA and proposed re-

structuring the transaction as a Lease Agreement and Option to Purchase (LAOP). Seller agreed with the proposal but insisted that the transaction be completed that day. The parties returned to respondent's office that afternoon and executed the documents necessary to finalize the transaction. After the closing of the transaction, respondent completed the release of seller's husband from the SBA loan.

Some of the funds paid by purchasers at the time of the closing were paid in cash. Respondent properly accounted for the cash as part of the transaction; however, respondent acknowledges that he failed to file the required reporting forms with the Internal Revenue Service.

Shortly after the transaction was completed, disputes arose between seller and purchasers regarding the transaction. The parties resolved most of the disputes between themselves without respondent's assistance. Respondent initially tried to work with the parties as an intermediary to resolve a dispute that arose when purchasers failed to make timely payments to seller. Respondent acknowledges that he was prohibited from representing either party when the disputes arose, and that he should not have become involved in the parties' disputes in any way. Respondent also acknowledges that he had a conflict of interest in representing both parties in connection with the disputes that arose and that he did not obtain informed waivers from the clients before proceeding.

As a result of the disputes between the parties, purchasers refused to make payments directly to seller and established a practice of delivering payments to respondent's office for transmission to seller. Respondent allowed this practice to continue and became a *de facto* escrow agent for some payments. Most payments delivered to respondent were checks made out to seller, but purchasers did, on occasion, deliver cash to respondent's office for payments to seller. Respondent did not maintain records in sufficient detail to provide an accounting of the payments delivered by purchasers to respondent's office for payment to seller. When initially asked to do so, respondent was unable to provide an accurate accounting of funds received by him on seller's behalf. However, respondent was later able to reconstruct an accurate accounting of funds received and disbursed by him.

The parties later retained separate counsel and litigation proceeded between them. The civil action was resolved in favor of seller.[1] It was discovered during this litigation that one purchaser had signed the name of the other purchaser to certain documents related to the LAOP, although the purchaser whose name was forged was present at the time the documents were signed, and respondent had notarized the signature.[2] Respondent believed at the time he notarized the document that the signature was authentic. However, respondent acknowledges that he failed to exercise due care to insure that the signature was actually that of the purchaser whose name was signed.

Following the transaction, respondent paid a broker's fee to the person who brokered the transaction between seller and purchaser. Respondent maintains payment of the fee was verbally authorized by seller. Seller, however, asserted she had not approved the payment. Respondent's file contains no documentation authorizing the disbursement.

## II. Foreclosure matter.

Client retained respondent to represent him in a foreclosure matter. Client had previously sold a piece of real estate to a buyer and had agreed to finance the purchase. The buyer died intestate. An attorney for the buyer's estate advised client that the estate would remain current on the debt; however, shortly thereafter, the estate changed its position.

Probate records indicated the buyer was survived by four children, three of whom were adults. Respondent initially attempted to execute a deed in lieu of foreclosure; however, the adult beneficiaries would not agree to that arrangement. Accordingly, respondent filed a formal foreclosure action. Respondent retained a process server who effected personal service on three of the four beneficiaries. Respondent was unable to locate any information as to the whereabouts of the minor beneficiary or the identity of any guardians for the child and was therefore unable to effect service.

---

1. Seller then brought a legal malpractice action against respondent, which was settled.

2. Purchasers were husband and wife.

Seven months after respondent was retained, client wrote respondent a letter expressing frustration over the fact that the matter remained pending. Because respondent had not been able to effect service on the fourth beneficiary, he advised client that he would withdraw from representation to enable client to retain new counsel to assist with the matter in a more timely fashion. Respondent refunded his entire fee and returned all original papers, as well as copies of the work he had done to date, to client. However, respondent did not file a motion to be relieved as counsel.

At some point within the next six months, the secretary for the Chief Judge for Administrative Purposes telephoned respondent regarding the status of the foreclosure action. The secretary advised respondent that he would either have to try the case or dismiss it. In response to the telephone call, respondent prepared documentation to dismiss the action without prejudice and forwarded it to the judge's office. He did not discuss this course of action with client, nor did he provide client with a copy of the documentation. Client had retained successor counsel but respondent had not been provided with that information. When client learned about the dismissal without prejudice, he contacted respondent. Respondent advised client of the circumstances which led to his sending the dismissal without prejudice to the presiding judge. Respondent offered to assist client or successor counsel with reinstating the action or otherwise bringing the matter to a conclusion. Respondent did not hear back from client or anyone on his behalf.

Respondent admits he should have communicated with client regarding the dismissal of the action without prejudice, and that he should have filed a motion to be relieved as counsel when he ceased acting on client's behalf.

### Law

As a result of his conduct, respondent has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (a lawyer shall provide competent representation to a client); Rule 1.2(a) (a lawyer shall abide by a client's decisions concerning the objectives of representation and shall consult with the client as to the means by which they are to be pursued); Rule 1.3 (a lawyer shall act with reason-

able diligence and promptness in representing a client); Rule 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); Rule 1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); Rule 1.5(b) (when the lawyer has not regularly represented a client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation); Rule 1.7(a) (except in certain circumstances, a lawyer shall not represent a client if the representation of that client will be directly adverse to another client or if the representation may be materially limited by the lawyer's responsibilities to another client); Rule 1.15(a) (a lawyer shall hold client funds in a separate account and complete records of such funds shall be kept by the lawyer); Rule 1.16(a) (a lawyer shall not represent a client or, where representation has commenced, shall withdraw from representation of a client if the representation will result in violation of the Rules of Professional Conduct or if the lawyer is discharged); Rule 2.1 (in representing a client, a lawyer shall exercise independent professional judgment and render candid advice); Rule 2.2(a)(1) (a lawyer may act as intermediary between clients if the lawyer consults with each client concerning the implications of the common representation and obtains each client's consent to the common representation); Rule 2.2(a)(2) (a lawyer may act as intermediary between clients if the lawyer reasonably believes the matter can be resolved on terms compatible with the clients' best interests, that each client will be able to make adequately informed decisions in the matter and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful); Rule 2.2(a)(3) (a lawyer may act as intermediary between clients if the lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients); Rule 2.2(b) (while acting as intermediary, the lawyer shall consult with each client concerning the decisions to be made and the considerations relevant in making them, so that each client can make adequately informed decisions); Rule 2.2(c) (a lawyer

shall withdraw as intermediary if any of the conditions stated in Rule 2.2(a) is no longer satisfied); Rule 8.4(a) (it is professional misconduct for a lawyer to violate the Rules of Professional Conduct); and Rule 8.4(e) (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).

Respondent has also violated the following provisions of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (it shall be a ground for discipline for a lawyer to violate or attempt to violate the Rules of Professional Conduct) and Rule 7(a)(5) (it shall be a ground for discipline for a lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law).

### Conclusion

We find that respondent's misconduct warrants a public reprimand. Accordingly, we accept the Agreement for Discipline by Consent and publicly reprimand respondent for his actions.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.